1

2

3

4

5

6

7            IN THE UNITED STATES DISTRICT COURT

8           FOR THE EASTERN DISTRICT OF CALIFORNIA

9   RONALD J. LUCERO,

10          Plaintiff,                    No. CIV S-10-2132 GGH P

11      vs.

12   STEPHEN MAYBERG, et al.,

13          Defendants.                    ORDER &

14   _____/      FINDINGS AND RECOMMENDATIONS

15   Introduction

16          Plaintiff, committed to a state mental hospital, pursuant to Cal. Penal Code §

17   1026, having been found not guilty by reason of insanity in a criminal case, is proceeding pro se

18   in a civil rights action.  Pending before the court are: 1) a motion to dismiss, filed on March 3,

19   2011 (docket # 18), brought by defendants Benchman, Cate, DeMorales, Griffith, Holt, Knapp,

20   Mayberg, Mills, Radavsky, Schwarzenegger, Vazquez,[1] Walker and the State of California, to

21   which plaintiff filed his opposition on May 2, 2011 (having been granted an extension of time),

22   after which these defendants filed a reply on May 6, 2011; and 2) a motion to dismiss, filed on

23   May 4, 2011 (docket # 23), brought by defendants County of San Luis Obispo, Patrick Hedges,

24   _____

25          [1] Counsel for defendant Vazquez initially spells the name "Vasquez" in the notice of
    motion, but then returns in the supporting memorandum to plaintiff's spelling of the name
26   ("Vazquez"), which spelling the court will retain at this point.

1

1  Robert Thompson, and Kelly Kenitz, to which plaintiff filed an opposition on May 31, 2011.

2  Plaintiff's Allegations

3            Plaintiff, who was involuntarily civilly committed to a state hospital pursuant to

4  Cal. Pen. Code § 1026 when he was found not guilty by reason of insanity of a criminal offense,

5  sets forth four (of five) claims regarding alleged violations of his Fourteenth Amendment rights

6  and his rights as a mentally disabled person under the Americans with Disabilities Act (ADA)

7  when he was, on March 17, 2009, while in the custody of the Department of Mental Health and

8  Atascadero State Hospital (ASH), transferred first to San Luis Obispo County Jail (SLO CJ),

9  then to the custody of the California Department of Corrections and Rehabilitation (CDCR) and

10  placed in Wasco State Prison and then California State Prison-Sacramento (CSP-Sac) until his

11  return to ASH on August 17, 2009 (some five months later).  See Complaint.  He asserts

12  defendants were deliberately indifferent and showed willful disregard for Solano County

13  Superior Court's jurisdiction with an improper custody transfer in violation of state and federal

14  law and the ADA, regarding providing disabled "the most integrated and least restrictive

15  setting").  See id.  Plaintiff also makes a fifth claim of a violation of his due process rights and

16  his rights under RLUIPA, based on an allegation that ASH employees intentionally destroyed

17  plaintiff's personal property, containing numerous sacred Native American religious items while

18  he had been transferred away.  Id.  Plaintiff seeks relief in the form of compensatory and punitive

19  damages, declaratory and injunctive relief.  Id.

20  Motions to Dismiss

21            *Legal Standard for Motion to Dismiss.*

22            In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

23  a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

24  it must contain factual allegations sufficient to "raise a right to relief above the speculative

25  level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The

26  pleading must contain something more...than...a statement of facts that merely creates a suspicion

[of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

1          *First Motion to Dismiss*

2          In the first motion to dismiss, brought by thirteen of the defendants, Benchman,

3   Cate, DeMorales, Griffith, Holt, Knapp, Mayberg, Mills, Radavsky, Schwarzenegger, Vazquez,

4   Walker, in their individual and official capacities, and the State of California, in its official

5   capacity, the following grounds are raised: 1) the State of California may not be sued under §

6   1983; 2) plaintiff failed to allege that any of the conditions of his confinement were punitive; 3)

7   the conditions of plaintiff's confinement did not implicate a liberty interest; 4) there are sufficient

8   post-deprivation remedies for the alleged unauthorized deprivation of his property available to

9   plaintiff; 5) plaintiff failed to allege facts to show that any defendant deprived him of his right to

10  equal protection; 6) plaintiff alleged no facts showing defendants knew or suspected another

11  prisoner would attack him or that he needed mental health treatment; 7) plaintiff did not allege

12  facts showing any defendant participated in any claimed violation of his constitutional rights; 8)

13  defendants did not violate any constitutional right and are entitled to qualified immunity.  Notice

14  of Motion to Dismiss at dkt. # 18; Memorandum of Points and Authorities in Support of [First]

15  Motion to Dismiss at docket # 18-1 (hereafter, MTD1), p. 2.

16          *ADA & RLUIPA*

17          At the outset, the court observes that defendants correctly characterize plaintiff's

18  claims as having been brought under the Fourteenth Amendment, the Americans with

19  Disabilities Act, and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

20  MTD1, p. 1.[2]  Defendants then make the erroneous leap that, upon screening, the undersigned

21  only permitted plaintiff to proceed on his claims under § 1983.  Id.  However, plaintiff accurately

22  _____

23          [2] Specifically, plaintiff brought this action pursuant to 42 U.S.C. § 1983; the Americans
    with Disabilities Act, Title II 42 U.S.C. § 12101, et seq.; Civil Rights Act, Title VI 42 U.S.C. §
    2000d et seq.; Rehabilitation Act, 29 U.S.C. § 794; Religious Land Use and Institutionalized

24  Persons Act, 42 U.S.C. §§ [2000cc et seq.].  Complaint, p. 3.  As to 42 U.S.C. §§1996a,
    addressed to the "traditional Indian religious use of peyote," this provision appears inapposite,

25  and as to 42 U.S.C. § 2000bb, the Religious Freedom Restoration Act has been held
    unconstitutional.  City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157 (1997)(RFRA in

26  excess of Congress' power).

avers that he has been permitted to proceed on all claims.  First Opposition (Opp.1), p. 2.  While the screening order, filed on October 6, 2010 (docket # 8) makes reference, in standardized language, to the complaint's having stated a cognizable claim pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b), there are no findings and recommendations recommending dismissal of any claims nor is there any order dismissing other allegations.  In listing the State as a party, plaintiff asserts that he is suing for violations of his constitutional rights and his rights under the ADA.  Complaint, p. 4.  Moreover, and more tellingly, the court found the complaint appropriate for service upon the State as a defendant, which would not have occurred if plaintiff were proceeding against the state under § 1983, as it is without doubt that the Eleventh Amendment serves as a jurisdictional bar to suits brought by private parties against a state or state agency unless the state or the agency consents to such suit.  See Quern v. Jordan, 440 U.S. 332 (1979); Alabama v. Pugh, 438 U.S. 781 (1978) ( per curiam); Jackson v. Hayakawa, 682 F.2d 1344, 1349-50 (9th Cir. 1982).  In his opposition, plaintiff, while he correctly contends that the State may be sued for violations of the Rehabilitation Act and Title II of the ADA, "in light of plaintiff[']s limited legal knowledge, in the interest of the court[']s economy...." also states "the plaintiff has no opposition to the State being dismissed as a named defendant if this court rules it appropriate." Opp.1, p. 4.  In reply, defendants characterize this statement as a concession that this defendant should be dismissed.  However, as defendants appear to have been confused as to what bases plaintiff was proceeding under, the court finds that the State of California should not be dismissed as a defendant with respect to plaintiff's ADA claims.

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of a disability.  42 U.S.C. § 12132 (1994); Weinrich v. L.A. County Metro Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).  To state a claim under Title II, the plaintiff must allege four elements: 1) the plaintiff is an individual with a disability; 2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; 3) the plaintiff was either excluded from

1   participation in or denied the benefits by the public entity; and 4) such exclusion, denial of

2   benefits or discrimination was by reason of the plaintiff's disability.  Weinrich, 114 F.3d at 978.

3           Under the ADA, plaintiff may bring a claim pursuant to Title II of the ADA

4   against state entities for injunctive relief and damages.  See Phiffer v. Columbia River

5   Correctional Institute, 384 F.3d 791 (9th Cir. 2004); Lovell v. Chandler, 303 F.3d 1039 (9th Cir.

6   2002).  However, he cannot seek damages pursuant to the ADA against the defendants in their

7   individual capacities.  Eason v. Clark County School Dist., 303 F.3d 1137, 1144 (9th Cir. 2002),

8   citing Garcia v. S.U.N.Y. Health, 280 F.3d 98, 107 (2d Cir. 2001).  To the extent he makes

9   claims of violations of the ADA against any individual defendant, plaintiff could proceed only to

10  the extent that plaintiff seeks injunctive relief and has sued such individual defendant in an

11  official capacity.  Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003); Thompson

12  v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  Since, however, the State is named as a defendant,

13  the individual defendants should be dismissed.

14          As to plaintiff's claim V (summarized above), in which plaintiff seeks to

15  implicate several ASH employees for, inter alia, a violation of his rights under RLUIPA based on

16  his allegation of intentional destruction or disposal of his personal property, including numerous

17  sacred Native American religious items while he was transferred away, it is unclear whether

18  plaintiff meets the threshold requirement for proceeding.  Under 42 U.S.C. § 2000cc-1 (a)(1)(2):

19          No government shall impose a substantial burden on the religious
            exercise of a person residing in or confined to an institution...even
20          if the burden results from a rule of general applicability, unless the
            government demonstrates that imposition of the burden on that
21          person - -

22                  (1) is in furtherance of a compelling governmental interest; and
                    (2) is the least restrictive means of furthering that
23                  compelling governmental interest.

24  Arguably, plaintiff fails to implicate an institutional regulation, policy or procedure that burdens

25  the practice of his religion.  Rather, he claims a lack of enforcement of, or a deviation from, an

26  existing policy or procedure as regards the manner in which his religious objects and other

6

1  personal property were stored for the period when he was taken from the hospital leading to the

2  possible destruction of his personal, religious property.  To proceed under RLUIPA, plaintiff

3  would have to challenge a program, policy or procedure which allegedly placed a substantial

4  burden on him limiting the practice of his religion.  See, e.g., Warsoldier v. Woodford,418 F.3d

5  989 (inmate challenge to prison grooming policy under RLUIPA).  Nevertheless, plaintiff will be

6  permitted to proceed on this portion of Claim V at this point, particularly since defendants failed

7  to address the question.

8          However, RLUIPA provides no basis for suits against individuals in their

9  individual capacityy.  See Rupe v. Cate, 688 F. Supp. 2d 1035, `045-46 (E.D. Cal. 2010) and

10 cases cited therein.  Moreover, sovereign immunity forestalls plaintiff's claims against

11 defendants in their official capacities for money damages under RLUIPA for allegedly imposing

12 a substantial burden on the practice of his religion.  Alvarez v. Hill, __ F.3d ___, 2012 WL

13 164507 *1 (9th Cir. Jan. 20, 2012), citing Sossamon v. Texas, __ U.S.___, 131 S. Ct. 1651, 1655

14 (2011) (by accepting federal funding states do not waive their sovereign immunity to suits by

15 private parties for money damages under RLUIPA).  Thus all claims for damages under RLUIPA

16 must be dismissed.

17         To the extent plaintiff seeks prospective injunctive relief plaintiff need not

18 proceed against the individual defendants, rather the court will infer that the State is a named

19 defendant with respect to this claim, as plaintiff would be permitted to proceed against any

20 individual defendant in his or her official capacity only.  Therefore, the court will recommend

21 dismissal of all individual defendants in their official and individual capacities as to plaintiff's

22 RLUIPA claim.  (The court addresses the due process violation he claims for alleged mis-

23 handling of his personal property separately below.)

24         Thus, to the extent plaintiff has made cognizable claims against the defendant

25 State of California under the ADA and RLUIPA, such claims will proceed as unchallenged at this

26 point (injunctive relief only under RLUIPA), but the court will recommend the dismissal of all

1    individual defendants named with respect to these claims, in both their individual and official

2    capacities.  Defendant State of California will also remain as a defendant under the ADA for

3    relief in the form of money damages as well.

4                            *Liberty Interest*

5                   As to all five of his claims, plaintiff alleges violations of his rights to due process

6    and equal protection under the Fourteenth Amendment as a person involuntarily civilly

7    committed pursuant to Cal. Penal Code § 1026, et seq., and/or his rights as a pretrial detainee and

8    claims violations of his rights as a mentally disabled individual under the ADA.  Complaint, pp.

9    7-22.  In his first claim (I), plaintiff contends that on March 17, 2009, he was placed alone in a

10   locked unit and asked by the Atascadero State Hospital (ASH) Department of Police Services

11   (DPS) about his alleged involvement in a physical altercation with another patient but refused to

12   say anything after being cut-off in mid-sentence, was directed to submit to photos and to remove

13   his clothes.  Plaintiff was informed, later that day, that he was being moved to another unit into

14   "administrative isolation" but was not told what that would entail; in addition, plaintiff did not

15   receive a review by a psychiatric treatment team or ASH administrators before being moved.

16   Defendant Benchman told plaintiff his personal property would be taken care of when DPS

17   officers gave their approval.  Complaint, pp. 7-8.

18                   Plaintiff was locked into an isolation room and at about 5:00 p.m., placed in

19   waistchains and shackles by AHS DPS, told he was under arrest and "administratively

20   transferred" to San Luis Obispo County Jail.  Id., at 8.  Plaintiff contends that at all times, he

21   was under the care and authority of DMH and ASH, by order of the committing court, pursuant

22   to Cal. Pen. Code § 1026, and that defendants Mayberg, Director of the California Department of

23   Mental Health (DMH); Radavsky, DMH Deputy Director of Long Term Care; DeMorales,

24   Executive Director of ASH; and Knapp, Medical Director for ASH, failed to formulate and/or

25   enforce a policy, procedure or practice that would have prevented plaintiff's transfer of custody

26   from ASH to San Luis Obispo County Jail (SLO CJ), a more restrictive setting; failed to properly

8

1  review or inform him of a change in his custody status; and failed to ensure proper treatment for

2  plaintiff, including mental health care treatment, while he was confined in the county jail.  Id., at

3  8.

4         Claim II centers on the allegedly "restrictive" conditions under which plaintiff was

5  housed at San Luis Obispo County Jail (SLO CJ) as of March 17, 2009.  Complaint, p. 9.

6  Plaintiff, a pretrial detainee, was put on "full restraint" status in accordance with jail "practice,

7  policy and procedures for mental health patients received from ASH."  Id.  Plaintiff was

8  compelled to shower, use the dayroom and phone, and go for yard exercise in waistchains and

9  shackles.  Id.  Plaintiff claims he was provided nothing but a towel to cover himself other than

10  for yard time or else he would have been forced to shower in his clothes while restrained by

11  chains.  Id.  Plaintiff avers that these conditions were more restrictive than those "endured" by

12  the SLO CJ general population.  Id.  From March 17, 2009 to June 18, 2009, he was housed in

13  "disciplinary isolation" although he had no disciplinary problems at SLO CJ; when plaintiff

14  spoke to defendant Thompson, senior classification officer, repeatedly asking for a change in

15  housing and treatment, but was told that the classification, isolation, restrictions and housing to

16  which he was subject arose from his being an ASH patient.  Id., at 10.  Plaintiff was told that he

17  could not file a grievance related to these issues pursuant to SLO CJ policy with respect to ASH

18  patients.  Id.  Plaintiff was also excluded during this time from any mental health treatment or

19  services as a result of SLO CJ policy or practice of excluding patients from ASH from proper

20  care for their disabilities; plaintiff states these conditions of confinement were significantly

21  worse than those at ASH under DMH.  Id.

22         Plaintiff alleges that defendants Hedges, Sheriff of San Luis Obispo County;

23  Thompson, SLO CJ Classification Sergeant; and Kenitz, SLO CJ Correctional Lieutenant,

24  actively enforced the discriminatory practices and policies of SLO CJ referenced above with

25  respect to those involuntarily civilly committed to ASH under Cal. Pen. Code § 1026.

26  Complaint, pp. 5,6, 10-11.  Defendants Mayberg, DeMorales, and Knapp failed to enforce a

1  policy, practice or procedure to ensure proper treatment, including mental health care, for

2  plaintiff while housed at SLO CJ.  Id., at 11.  Defendant County of San Luis Obispo (Board of

3  Supervisors) actively pursued a policy and practice of failing to formulate or enforce a policy of

4  delivering adequate mental health care to plaintiff.  Id.

5            Plaintiff also alleges that defendant State of California failed to formulate and

6  provide proper standards of mental health care in entities or agencies within the state, not limited

7  to SLO County and its jail.  Complaint, p. 11.  Defendant Schwarzenegger failed to provide

8  adequate mental health care standards for entities operating in the state, including SLO County

9  and jail, and failed to enforce proper policies, procedures and practices to make sure the entities

10  and agencies provided services and treatment for plaintiff for his mental disability.  Id.

11            In claim III, plaintiff was arraigned in SLO County Superior Court on March 20,

12  2009, by agents of defendant SLO County and from that date until June 3, 2009, although aware

13  of plaintiff's status as an ASH § 1026 civil committee, neither the agents nor the court inquired

14  into his mental capacity.  Complaint, p. 12.  On June 3, 2009, plaintiff was ordered committed to

15  the CDCR by SLO County notwithstanding the prior jurisdictional authority of the Solano

16  County Superior Court.  Id., at 13.  Plaintiff's attorney informed the SLO Court that plaintiff was

17  already committed to the DMH and ASH as an NGI (not guilty by reason of insanity).  Id.

18  Although notified on June 12, 2009, of the conclusion of plaintiff's court proceedings and of his

19  commitment to CDCR, pending transfer, personnel at ASH, ASH DPS, and DMH failed to

20  inform defendant SLO County that DMH had custody of plaintiff pursuant to another court's

21  prior order.  Id.   On June 18, 2009, plaintiff was transferred to CDCR, and on June 26, 2009,

22  plaintiff was attacked by his state prisoner cellmate and injured.  Id.

23            Plaintiff alleges that defendants Mayberg, Radavsky, DeMorales and Knapp are

24  responsible for having failed to implement/enforce a policy or procedure to prevent the transfer

25  of plaintiff's custody to the CDCR and a more restrictive setting, and for failing to ensure mental

26  health treatment for plaintiff at CDCR as well as for failing to protect him from assault by state

prisoners.  Id.  Plaintiff also claims that defendant Holt, chief of AHS DPS, although informed of

it, failed to prevent plaintiff's transfer, resulting in violations of his constitutional rights and his

injury.  Id.  Plaintiff concedes that "the courts" followed the established guidelines with respect

to convicting him and staying his sentence due to his prior P.C. § 1026 commitment, plaintiff

faults the court and defendant SLO County for not having prevented his transfer.  Id., at 14.

Despite his concession with regard to having been convicted in SLO County Superior Court and

having been given a stayed sentence, plaintiff alleges defendant Schwarzenegger and defendant

State failed in implementing proper guidelines for defendant SLO County "and its judicial

system" with regard to his having been sentenced to CDCR.  Id.

In claim IV, plaintiff alleges that he was taken into custody at Wasco State Prison

and compelled to stand naked for several minutes in front of inmates and female officers and

support staff and "to spread his buttocks and squat several times," after which he was housed

with "other state prisoners" in the reception center.  Complaint, p. 15.  On June 26, 2009, within

two or three minutes of a state prisoner having been placed in his cell, plaintiff was attacked by

him, after which plaintiff was placed into a "'Stand Up' cage and forced to remain there" for

several hours while handcuffed before being transported to Kern Valley Medical Center.  Id., at

15-16.  After having been "accused of a 'horrific crime," plaintiff was forced to submit to a

"'rape kit'" procedure, his only alternative "to clear his name."  Id., at 16.  Plaintiff had to rip out

his hair from various parts of his body including his genital area causing him pain.  Id.  The

prison cellmate later retracted the false criminal allegations leading to this process.  Id.

Plaintiff was excluded from mental health treatment or services from June 18,

2009 to June 30, 2009, at Wasco, where conditions of confinement were "substantially worse"

than those at DMH and ASH.  Id.  On June 30, 2009, plaintiff was transported to CSP-Sac

without having gone through the ICC (Institutional Classification Committee) process or having

been endorsed for transfer by the appropriate CDCR officials; upon his arrival, prison officials

had no documentation to show why he was there or in CDCR custody.  Id.  Plaintiff was placed

1 in administrative segregation (Ad Seg) pending his placement by ICC, after which at every ICC

2 hearing, it could not be determined why plaintiff was in CDCR custody and plaintiff was forced

3 to remain in Ad Seg from June 30, 2009 to August 17, 2009.  Id.  While plaintiff was "provided

4 limited mental health services," plaintiff had to be in leg shackles and waistchains or sometimes

5 in handcuffs for treatment sessions and the conditions were significantly more restrictive than

6 those "imposed on the regular prison population."  Id., at 17.  Ad Seg conditions, including no

7 phone access, "limited exercise in a small cage," and the manner by which he was permitted to

8 have canteen, were significantly more restrictive than confinement conditions under DMH at

9 ASH.  Plaintiff was abruptly transferred back to ASH without notice and based on unknown

10 authorization, on August 17, 2009.  Id.

11         Defendant Vazquez, Warden of Wasco State Prison, and Walker, Warden of CSP-

12 Sac, failed, inter alia, to follow proper procedure for detaining an involuntary civil committee,

13 failed to verify the validity of plaintiff's custody and detention in CDCR, failed to provide

14 services and treatment for plaintiff's mental disability, failed to provide plaintiff treatment in the

15 least restrictive setting, failed to prevent plaintiff's being assaulted and injured and, along with

16 defendants Cate, Schwarzenegger and State, also failed in implementing/enforcing proper policy

17 with regard to the treatment of involuntary civil committees confined in state penal institutions.

18 Id., at 6, 17-18.

19         In claim V, in addition to claiming violations of his rights under RLUIPA

20 (addressed above), plaintiff also claims violations of his Fourteenth Amendment rights and rights

21 under the ADA, following his return on August 17, 2009 to ASH, when he asked for the return of

22 his personal property which was supposed to have been stored by ASH policy.  Complaint, p. 19.

23 From Aug. 17, 2009 to Aug. 23, 2009, plaintiff was given conflicting responses as to what

24 happened to his property.  Id., at 19-20.  Plaintiff received an unsatisfactory response to his

25 property complaint on Aug. 27. 2009 and resubmitted it to the executive director, but received no

26 response by the September 17, 2009 deadline; instead the response he received on October 8,

1   2009 was past deadline and with parts of his complaint missing. Id., at 20-21. Plaintiff and

2   another witness observed defendant Benchman, on September 21, 2009, placing unknown papers

3   in plaintiff's chart. Id., at 20. Plaintiff, on September 2009, spoke to ASH DPS Officer Gail

4   Shipley, "to report a crime," stating his belief that his personal property had been intentionally

5   destroyed by ASH employees, possibly defendant Benchman, and that it had included numerous

6   sacred Native American religious items. Id. Plaintiff's efforts proved fruitless and his property

7   has not been returned. Id., at 19-21. Plaintiff alleges that there are standard policies at ASH for

8   the storage of a patient's property, and for the handling of Native American spiritual items. Id.,

9   at 21.

10          Plaintiff alleges that defendants Mayberg, Radavsky and DeMorales failed to

11  enforce or implement a policy or procedure for the handling and dispersal of plaintiff's property

12  and spiritual items and that defendants Griffith, Administrator for ASH; Benchman, Staff

13  Supervisor at ASH; and Mills, Shift Supervisor at ASH, failed to follow or enforce an established

14  policy with regard to disposing of plaintiff's property and failed in their "direct supervisory

15  capacity" with regard to his property, spiritual items and religious practice to prevent violations

16  of his rights. Id., at 22.

17          As defendants contend, the Fourteenth Amendment applies to challenges to

18  conditions of confinement by those who are civilly committed. MTD, p. 5, citing Jones v.

19  Blanas, 393 F.3d 918, 931 (9th Cir. 2004) (Fourteenth Amendment's more protective standard

20  applicable for detainees not convicted of a crime); Hydrick v. Hunter, 500 F.3d 978, 997 (9th Cir.

21  2007), vacated on other grounds, 129 S. Ct. 2431 (Mem.), (2009) (finding that Fourteenth

22  Amendment requires that those civilly committed to state hospital (Atascadero, here) pursuant to

23  the Sexually Violent Predators Act not be subjected to conditions that amount to punishment). In

24  Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861 (1979), the Supreme Court stated: "[i]n

25  evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate

26  only the protection against deprivation of liberty without due process of law, we think that the

1   proper inquiry is whether those conditions amount to punishment of the detainee."  Defendants

2   note that, under Bell, at 536-37, a pretrial detainee may be subjected to the restrictions and

3   conditions of the detention facility so long as those conditions and restrictions do not amount to

4   punishment, or otherwise violate the Constitution."  Thus, defendants Mayberg,[3] Radavsky,

5   DeMorales and Knapp contend that claim I should be dismissed because plaintiff does not

6   therein allege the conditions to which he was subjected at ASH were punitive in describing how

7   he was isolated, photographed and placed in waistchains and shackles before being transferred to

8   SLO Superior Court because these steps were simply for ASH's security.  MTD1, p. 6.  This

9   contention, however, does not address the gravamen of this allegation which centers on the

10   defendants'– high level officials/administrators at DMH and ASH – alleged failure to enforce the

11   proper procedures with regard to a change in custody status of plaintiff who had been committed

12   to DMH and the hospital facility by court order, pursuant to Cal. Pen. Code § 1026, as plaintiff

13   essentially argues in his opposition (p. 5).

14            Under Cal. Pen. Code § 1026(a) states, in relevant part:

15            If the verdict or finding be that the defendant was insane at the time
             the offense was committed, the court, unless it shall appear to the

16            court that the sanity of the defendant has been recovered fully, shall
             direct that the defendant be confined in a state hospital for the care

17            and treatment of the mentally disordered or any other appropriate
             public or private treatment facility approved by the community

18            program director, or the court may order the defendant placed on
             outpatient status pursuant to Title 15 (commencing with Section

19            1600) of Part 2.

20   A "patient" may be transferred from one state hospital to another state hospital "by proper

21   authority" or may be transferred to an out-of-state hospital pursuant to statute.  Cal. Pen. Code §

22   1026(b).  The procedures for a "defendant" committed or transferred, pursuant to Cal. Pen. Code

23   § 1026, to a state hospital to be transferred to an approved public or private treatment facility are

24

25            [3] Under Cal. Welf. & Inst. Code § 4011, also cited by plaintiff,  "[u]nless otherwise
     indicated in this code, the State Department of Mental Health has jurisdiction over the execution
     of the laws relating to the care, custody, and treatment of mentally disordered persons, as

26   provided in this code."

set forth in § 1026(c), and include affording the defendant or a prosecuting attorney an opportunity to contest the transfer and to be heard.   Under § 1026(d), the court is to notify, inter alia, the defendant and his/her attorney before "making an order of transfer... ."   Under Cal. Pen. Code § 1026(e), specific documentation is set forth that is to accompany the defendant to his place of commitment, including, inter alia, his commitment order.

Cal. Pen. Code § 1026.2 addresses the procedures to be followed when a person, committed to a state hospital, applies for release on the ground that his sanity has been restored. Under Cal. Pen. Code § 1026.2(b), while a hearing is pending for the committed person, the medical director of the facility where the person is confined is to forward a summary of the treatment programs for the person to the community program director (or designee) for review and is to "designate a facility within a reasonable distance from the court in which the person may be detained pending the hearing on the application for release.  The facility so designated shall continue the program of treatment, shall provide adequate security, and shall, to the greatest extent possible, minimize interference with the person's program of treatment." Pursuant to § 1026.2(c):

> a county jail may not be designated unless the services specified in subdivision (b) are provided and accommodations are provided which ensure both the safety of the person and the safety of the general population of the jail. If there is evidence that the treatment program is not being complied with or accommodations have not been provided which ensure both the safety of the committed person and the safety of the general population of the jail, the court shall order the person transferred to an appropriate facility or make any other appropriate order, including continuance of the proceedings.

Under Cal. Pen. Code § 1026.2 (m):

> This subdivision shall apply only to persons who, at the time of the petition or recommendation for restoration of sanity, are subject to a term of imprisonment with prison time remaining to serve or are subject to the imposition of a previously stayed sentence to a term of imprisonment.  Any person to whom this subdivision applies who petitions or is recommended for restoration of sanity may not be placed in a forensic conditional release program for one year,

15

1          and a finding of restoration of sanity may be made without the
person being in a forensic conditional release program for one year.

2          If a finding of restoration of sanity is made, the person shall be
transferred to the custody of the California Department of

3          Corrections to serve the term of imprisonment remaining or shall
be transferred to the appropriate court for imposition of the

4          sentence that is pending, whichever is applicable.

5          The legislation codified in Cal. Pen. Code § 1026, et seq., gives rise to far more

6 than an implication that one committed under that statutory scheme is to be retained within the

7 custody of the DMH and the designated state hospital until the court which committed him or her

8 makes a finding that the individual's sanity has been restored.  Only then may such a person

9 "subject to the imposition of a previously stayed sentence to a term of imprisonment" ... "be

10 transferred to the custody of the California Department of Corrections to serve the term of

11 imprisonment ... ."  Cal. Pen. Code § 1026.2 (m).

12          Defendants contend that plaintiff fails to show a liberty interest in being

13 transferred to the least restrictive environment and fails to allege any federal or state authority for

14 this proposition.  MTD, p. 10.  They argue that individuals under a Cal. Pen. Code § 1026 civil

15 commitment are not entitled to a right to notice or other due process prior to a transfer and do not

16 have a liberty interest in the least restrictive form of confinement.  Id., citing Endsley v. Mayberg,

17 No. CIV-S-09-2311 WBS GG[H] P, 2010 WL 4829549, at *11 (E.D. Cal. Nov. 22, 2010) and

18 Endsley v. Luna, No. CIV 06-0961 DSF (SS), 2010 WL 3118584, at *23 (C.D. Cal. Aug. 5,

19 2010).  As plaintiff points out, however, in CIV-S-09- 2311, the transfer at issue concerned a

20 transfer from one state hospital to another, not from a state hospital to a jail to a state prison.

21 Opp.1, p. 9.  In  so stating, however, defendants' motion skirts or ignores the key issue: whether

22 or not the state statute, which plaintiff has cited repeatedly, creates or gives rise to a federal

23 liberty interest plaintiff may have in being maintained within the custody of DMH and ASH and

24 in being provided the treatment and conditions of confinement of that setting.  And to the extent

25 that plaintiff is contending that the leading officials of the state hospital to which he was

26 committed failed to enforce the procedure set forth by state law in violation of plaintiff's

constitutional rights, as he does with respect to these defendants, that is sufficient to withstand a motion to dismiss.  The same applies with respect to his claims against defendants Mayberg, DeMorales, Knapp in claim II, and against defendants Mayberg, Radavsky, DeMorales and Knapp in claim III.  In addition, plaintiff in claim III alleges that defendant Holt, chief of ASH police, failed to stop the transfer although informed of it.

    In suing the head of DMH and the administrators of ASH, plaintiff alleges that these officials are liable for allegedly having failed to implement and enforce the statutory and judicial requirements governing his custody and the conditions of his confinement when he was transferred first to a county jail and then to state prison.  Defendants sued under § 1983 in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; known of the violations and failed to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations.  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989).  "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v. Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute."  Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980).  "Without proximate cause, there is no § 1983 liability."  Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

    As defendants have not adequately addressed the germane question by their motion, the court does not find these defendants are being sued simply in a supervisory capacity, and finds that plaintiff may proceed against them in both an individual and official capacity.  The same applies to defendants Vazquez and Walker, wardens at Wasco and CSP-Sac, respectively, but only with respect to an alleged lack of implementation/enforcement of appropriate procedures with regard plaintiff's placement in prison facilities, that is, to the extent plaintiff may be said to have alleged a violation of a federal liberty interest thereby.  Regardless of whether plaintiff was

1  placed in ad seg, as defendants argue, for his security while the ICC investigated where he should

2  be placed and not as a form of discipline, the applicable statutory construct at issue mandates that

3  one under plaintiff's mandates that, in addition to "adequate security," when placed outside the

4  hospital setting, one such as plaintiff, is to receive "to the greatest extent possible," minimal

5  interference with his treatment program.  See, e.g., CPC § 1026.2.  In this context, when

6  defendants argue that does not describe the conditions to which he was subjected in the county

7  jail or the prison as "punitive" approaches the fanciful.  MTD, p. 9.  As plaintiff asserts, the fact

8  that, as one civilly committed, he was maintained in prison at all, on the face of it, was punitive.[4]

9  Opp.1, p. 6.

10        Nor does an argument for qualified immunity immunize their potential individual

11  liability.  In resolving a claim for qualified immunity the court addresses two questions: (1)

12  whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the

13  officers' actions violated a constitutional right and (2) whether a reasonable officer could have

14

15      [4] Cal. Welf. & Inst. Code § 7301 addresses the transfer of persons committed to a state hospital pursuant to the Penal Code, which provides for the procedure under which a transfer

16  may be made from a state hospital to the CDCR, which does not appear to be relevant here. "Whenever, in the opinion of the Director of Mental Health and with the approval of the Director

17  of Corrections, any person who has been committed to a state hospital pursuant to provisions of the Penal Code or who has been placed in a state hospital temporarily for observation pursuant

18  to, or who has been committed to a state hospital pursuant to Article 1 (commencing with Section 6300) of Chapter 2 of Part 2 of Division 6 of this code needs care and treatment under

19  conditions of custodial security which can be better provided within the Department of Corrections, such person may be transferred for such purposes from an institution under the

20  jurisdiction of the State Department of Mental Health to an institution under the jurisdiction of the Department of Corrections.

21      Persons so transferred shall not be subject to the provisions of Section 4500, 4501, 4501.5, 4502, 4530, or 4531 of the Penal Code.  However, they shall be subject to the general

22  rules of the Director of Corrections and of the facility where they are confined and any correctional employee dealing with such persons during the course of an escape or attempted

23  escape, a fight or a riot, shall have the same rights, privileges and immunities as if the person transferred had been committed to the Director of Corrections.

24      Whenever a person is transferred to an institution under the jurisdiction of the Department of Corrections pursuant to this section, any report, opinion, or certificate required or

25  authorized to be filed with the court which committed such person to a state hospital, or ordered such person placed therein, shall be prepared and filed with the court by the head of the

26  institution in which the person is actually confined or by the designee of such head."

1   believed that his conduct was lawful, in light of clearly established law and the information the

2   officer possessed.  Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987).  Although the

3   Supreme Court at one time mandated that lower courts consider these two questions in the order

4   just presented, more recently the Supreme Court announced that it is within the lower courts'

5   discretion to address these questions in the order that makes the most sense given the

6   circumstances of the case.  Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009).

7   Defendants, as noted, have not even adequately addressed the germane question, whether or not a

8   federal liberty interest was created by the statutory regime for those, like plaintiff, committed

9   pursuant to CPC § 1026, et seq., which liberty interest was violated by the administrators of

10  DMH and ASH by allegedly not having in place procedures and policies enforcing the statutory

11  guidelines.  Therefore, no showing of entitlement to qualified immunity for Mayberg; Radavsky;

12  DeMorales; and Knapp as to claims I and III, and Mayberg; DeMorales and Knapp as to claim II;

13  and Vazquez and Walker in claim IV.[5]

14           With respect, however, to plaintiff's individual capacity claims against defendants

15  former Governor Schwarzenegger and CDCR Secretary Cate in claim IV, plaintiff's claims of

16  individual liability do appear to be too attenuated.  Plaintiff's claims against these state officials

17  are predicated on their alleged failure to implement and enforce policies and procedures, pursuant

18  to Cal. Pen. Code § 1026, with respect to his having been housed at CDCR while he was still

19  remanded in the custody of ASH as involuntarily civilly committed.  Plaintiff fails to link these

20  officials to an alleged lack of policy with regard to his having been incarcerated at a state prison

21  which should not, by state statute, have occurred in the first place.  These defendants,

22  _____

23           [5] The state created liberty interest analysis is complicated, and it may well turn out that a
    person declared insane for the purposes of one crime does not retain such status when charged
24  with another crime.  In other words, as far as the second crime is concerned, there may well be no
    lingering presumption of insanity.  On the other hand, there may be.  The complexity of the
25  questions may give rise to qualified immunity in any event.  The point at this juncture is simply
    to say that there exist too many questions to resolve this issue on a motion to dismiss, and the
26  undersigned will not guess at the resolution essentially unaided.

1   Schwarzenegger and Cate, will be dismissed in an individual capacity.

2          Just as it is not necessary to allege Monell[6] policy grounds when suing a state or

3   municipal official in his or her official capacity for injunctive relief related to a procedure of a

4   state entity, Chaloux v. Killeen, 886 F.2d 247 (9th Cir. 1989), it follows that it is not necessary to

5   allege the personal involvement of a state official when plaintiffs are attacking a state procedure

6   on federal grounds that relates in some way to the job duties of the named defendant.  All that is

7   required is that the complaint name an official who could appropriately respond to a court order

8   on injunctive relief should one ever be issued.  Harrington v. Grayson, 764 F. Supp. 464, 475-

9   477 (E.D. Mich. 1991); Malik v. Tanner, 697 F. Supp. 1294, 1304 (S.D.N.Y. 1988).

10  ("Furthermore, a claim for injunctive relief, as opposed to monetary relief, may be made on a

11  theory of respondeat superior in a § 1983 action."); Fox Valley Reproductive Health Care v. Arft,

12  454 F. Supp. 784, 786 (E.D. Wis. 1978).  See also, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir.

13  1985), permitting an injunctive relief suit to continue against an official's successors despite

14  objection that the successors had not personally engaged in the same practice that had led to the

15  suit.  To the extent plaintiff sues officials in their official capacity for injunctive relief with

16  regard to any claims implicating a liberty interest, defendant wardens, Vazquez and Walker,

17  suffice as defendants in their official capacity with regard to his claims against CDCR policy or

18  lack thereof at the respective prisons at issue.  Therefore, defendants Schwarzenegger (for whom

19  Gov. Brown is automatically substituted in pursuant to Fed. R. Civ. P. 25(d) in an official

20  capacity) and Cate, each sued in an official capacity, should also be dismissed.

21          *Eighth Amendment*

22          Plaintiff has alleged defendants' deliberate indifference to his rights in violation

23  of the Eighth Amendment rights.  Pretrial detainees' Fourteenth Amendment rights are

24  analogized to the rights of prisoners under the Eighth Amendment.  Redman v. County of San

25  _____

26      [6]  Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

1   Diego, 942 F.3d 1435, 1441-1445 (9th Cir. 1991) (en banc).  To the extent plaintiff alleges the

2   deliberate indifference of officials to the conduct of their subordinates in committing

3   constitutional violations against him, such as a failure to protect, plaintiff's claims are, however,

4   conclusory and generalized.

> The absence of specifics is significant because, to establish
> individual liability under 42 U.S.C. § 1983, "a plaintiff must plead
> that each Government-official defendant, through the official's
> own individual actions, has violated the Constitution." Iqbal, 129
> S.Ct. at 1948.  Even under a "deliberate indifference" theory of
> individual liability, the Plaintiffs must still allege sufficient facts to
> plausibly establish the defendant's "knowledge of" and
> "acquiescence in" the unconstitutional conduct of his subordinates.
> Starr, 652 F.3d at 1206–07.  In short, Plaintiffs' "bald" and
> "conclusory" allegations are insufficient to establish individual
> liability under 42 U.S.C. § 1983.  See Iqbal, 129 S.Ct. at 1950–53;
> cf. Starr, 652 F.3d at 1216–17.

12  Hydrick v. Hunter, __ F.3d ___, 2012 WL 89157 * 4 (9th Cir. Jan. 12, 2012).

13          Defendants Schwarzenegger and Cate should be dismissed in their individual

14  capacities under § 1983.  This holds true as well for plaintiff's claims against defendants

15  Vazquez and Walker and all the individual defendants sued in any capacity under the Eighth

16  Amendment for the conditions of confinement to which he was subjected in state prison,

17  regarding having been taken into custody at all, having been subjected to a strip search, having

18  been attacked by another inmate, having been placed in ad seg and provided limited exercise but

19  not provided adequate mental health care and generally being subjected to conditions harsher

20  than those for a general population prisoner.  While the court finds that plaintiff's claims of a

21  violation of his due process with regard to a colorable federal liberty interest should continue at

22  this point, the undersigned finds plaintiff's allegations of a failure to protect and to provide

23  adequate mental health treatment, or with respect to being strip-searched or placed in ad seg,

24  with regard to defendants Vazquez and Walker, and any other defendant, cannot proceed because

25  such allegations do not rise to the level of an Eighth Amendment violation.

26  \\\\\

1          Inadequate Medical Care

2          In order to state a § 1983 claim for violation of the Eighth Amendment based on

3    inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

4    deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

5    285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

6    serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

7    501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

8    1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

9    Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

10         A serious medical need exists if the failure to treat a prisoner's condition could

11   result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

12   that a prisoner has a serious need for medical treatment are the following:  the existence of an

13   injury that a reasonable doctor or patient would find important and worthy of comment or

14   treatment; the presence of a medical condition that significantly affects an individual's daily

15   activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

16   F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

17   (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

18   grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

19         In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

20   defined a very strict standard which a plaintiff must meet in order to establish "deliberate

21   indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

22   However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

23   which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

24   Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

25   should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

26   \\\\\

22

A prison official acts with "deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation marks omitted). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson, 290 F.3d at 1188 (citation omitted). FN4 This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Farmer, 511 U.S. at 839, 114 S.Ct. 1970. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." McGuckin, 974 F.2d at 1059 (alteration and citation omitted).

> FN4. In a recent case, we recognized that "deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir.2003) (citations omitted); see also Gibson, 290 F.3d at 1197 (acknowledging that a plaintiff may demonstrate that officers "must have known" of a risk of harm by showing the obvious and extreme nature of a detainee's abnormal behavior). []

Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

\\\\\

1    Additionally, mere delay in medical treatment without more is insufficient to state

2  a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

3  F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

4  no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

5  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

6  1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

7  to provide additional support for a claim of deliberate indifference; however, it does not end the

8  inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

9  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

10  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

11  the defendant."  McGuckin, 974 F.2d at 1061.

12    Superimposed on these Eighth Amendment standards is the fact that in cases

13  involving complex medical issues where plaintiff contests the type of treatment he received,

14  expert opinion will almost always be necessary to establish the necessary level of deliberate

15  indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  In other words, under

16  the Eighth Amendment, the is ultimately not what was the most appropriate course of treatment

17  for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

18  criminally reckless.  Plaintiff's allegations regarding a lack of mental health care at the state

19  prisons or lack of an appropriate level of mental health treatment, or conditions of such limited

20  treatment, are generic, overbroad and fail to rise to the level of an Eighth Amendment violation.

21  Therefore, plaintiff's Eighth Amendment claims against all defendants are dismissed with leave

22  to amend.

23    Failure to Protect

24    As noted, a prison official's deliberate indifference to a substantial risk of harm to

25  an inmate violates the Eighth Amendment.  Farmer v. Brennan, 511 U.S. at 828, 114 S.Ct. 1970.

26  To succeed on a claim of deliberate indifference to the threat of serious harm or injury by another

1    prisoner, plaintiff must demonstrate that the deprivation of his rights was "objectively,

2    sufficiently serious."  Id. at 834, 114 S.Ct. at 1977.  "'[P]rison officials have a duty...to protect

3    prisoners from violence at the hands of other prisoners.'"  Farmer v. Brennan, 511 U.S. at 833,

4    114 S.Ct. at 1976.  "[A] prison official violates the Eighth Amendment when two requirements

5    are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious'....  For a claim

6    (like the one here) based on a failure to prevent harm, the inmate must show that he is

7    incarcerated under conditions posing a substantial risk of serious harm."  Id. at 834, 114 S.Ct. at

8    1977.  Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must

9    have a 'sufficiently culpable state of mind' ... [T]hat state of mind is one of 'deliberate

10   indifference' to inmate health or safety."  Id.  The prison official will be liable only if "the

11   official knows of and disregards an excessive risk to inmate health and safety; the official must

12   both be aware of facts from which the inference could be drawn that a substantial risk of serious

13   harm exists, and he must also draw the inference."  Id. at 837, 114 S.Ct. at 1979.  Again,

14   plaintiff's allegations regarding prison officials' Vazquez, Walker, Cate and Schwarzenegger's

15   failure to protect him are conclusory rather than based on specific claims setting forth who placed

16   the inmate who attacked him in his prison cell, and how doing so was either sufficiently

17   objectively serious and showed a sufficiently culpable mindset by any named defendant.  These

18   claims must be dismissed with leave to amend.  In doing so, however, plaintiff may not name

19   defendants Vazquez (warden at Wasco, where the attack allegedly occurred), Walker, Cate and

20   Schwarzenegger who are too attenuated from the incident to be implicated in any fashion; in

21   addition.

22            Limited Physical Exercise

23            Although a temporary denial of exercise does not per se constitute an Eighth

24   Amendment violation, denial of all outdoor exercise for an extended period may.  May v.

25   Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (temporary deprivation of 21 days without outdoor

26   exercise with no medical effects not a substantial deprivation); Hayward v. Procunier, 629 F.2d

599, 603 (9th Cir. 1980) (30-day emergency lockdown period was an unusual circumstance justifying denial of outdoor exercise); see also LeMaire v. Maass, 12 F.3d 1444, 1457-1458 (9th Cir. 1993) (while exercise is "one of the basic human necessities protected by the Eighth Amendment," where restriction from outdoor exercise arose from inmate's abuse of the privilege and posing a security risk, plaintiff's Eighth Amendment claim for deprivation thereof failed); but see, Spain v. Procunier, 600 F.2d 189, 199-200 (9th Cir. 1979) (upholding district court decision that inmates confined with almost total lack of outdoor exercise for period of years was cruel and unusual punishment, and requiring they be allowed one hour of outdoor exercise, five days a week, absent poor weather, unusual circumstances); see also, Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996) (defendants not entitled to summary judgment where plaintiff produced evidence showing deprivation of outdoor exercise for six-month period in administrative segregation).  The Ninth Circuit has clarified the elements necessary to state a deprivation that would rise to the level of an Eighth Amendment violation:

> An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjective.  Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.1995). "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities. The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." Id. (citations omitted).

Lopez v. Smith, 203 F.3d 1122, 1132-1133 (9th Cir. 2000).

In Lopez, the Ninth Circuit found that plaintiff's claim that he was denied all outdoor exercise for six and a half weeks met the objective requirement for an Eighth Amendment claim.  1132-1133.  The Lopez court noted that:

> The clear implication of May is that temporary denials of outdoor exercise must have adverse medical effects to meet the Eighth Amendment test, while long-term deprivations are substantial regardless of effects.

Lopez v. Smith, 203 F.3d at 1133 n. 15 (see May v. Baldwin, supra).

1     In claiming that he had limited exercise from June 30, 2009 "in a small cage" until

2     August 17, 2009, plaintiff fails to indicate adverse medical effects for this relatively short period.

3     Nor do his periods of confinement with respect to placement in Ad Seg or being stripped

4     searched before female prison staff implicate the Eighth Amendment.  Being placed in Ad Seg,

5     without more, does not constitute cruel and unusual punishment under the Eighth Amendment,

6     Anderson v. County of Kern, 45 F.3d 1310, 1315-16 (9th Cir.1995).

7                    *Claim of Property Deprivation in Violation of Due Process*

8           With respect to claim V, defendants are correct that plaintiff has failed to show a

9     deprivation of due process with respect to his claimed loss of personal property.  MTD, p. 7.

10    Plaintiff alleges in his complaint that this property was supposed to be held in storage pursuant to

11    ASH policy/procedure, beginning on August 17, 2009 (by which he no doubt means, on March

12    17, 2009, when he was transported from ASH to  SLO CJ).  Complaint, p. 19.  However, upon

13    his return on August 17, 2011, all of his allegations center on his many efforts to locate the

14    property with the strong implication that his property was either not stored or was destroyed,

15    definitively not in conformity with the applicable procedure.  Therefore, the claim is for an

16    intentional but unauthorized deprivation of property.

17          The United States Supreme Court has held that "an unauthorized intentional

18    deprivation of property by a state employee does not constitute a violation of the procedural

19    requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

20    postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533, 104 S.

21    Ct. 3194 (1984).  Thus, where the state provides a meaningful postdeprivation remedy, only

22    authorized, intentional deprivations constitute actionable violations of the Due Process Clause.

23    An authorized deprivation is one carried out pursuant to established state procedures, regulations,

24    or statutes.  Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City

25    of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).  The California Legislature has provided a

26    remedy for tort claims against public officials in the California Government Code, §§ 900, et seq.

Since plaintiff has not alleged facts which suggest that the deprivation in the form of destruction and/or confiscation of his personal property was authorized, his allegations against defendants Mayberg, Radavsky and DeMorales on this claim and against defendants Griffith, Benchman and Mills do not state a cognizable claim for relief.

### *Equal Protection & Right to Privacy*

"To state a claim under 42 U.S.C.§ 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998) (citations omitted).  This court finds that to the extent plaintiff claims discrimination by defendants any such claim is subsumed within his claim implicating a violation of his federal liberty interest by his placement in jail and prison custody.  Plaintiff's claims for violations of equal protection should be dismissed.

To the extent plaintiff claims that his Fourteenth Amendment right to privacy was violated by female prison staff witnessing him standing naked and being strip-searched, plaintiff has not alleged a violation of his constitutional rights.  See, Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988); Grummet v. Rushen, 779 F.2d 491 (9th Cir. 1985).  The Ninth Circuit has recently determined that a male pretrial detainee did not state a claim of a violation of his Fourteenth Amendment equal protection rights when he was strip-searched by a female cadet, although the court did find a violation of plaintiff's Fourth Amendment rights where the female cadet conducted the cross-gender strip search, touching intimate parts of the detainee's body. Byrd v. Maricopa County Sheriff's Dept., 629 F.3d 1135 (9th Cir. 2011).  Those circumstances are not at issue herein and this claim should be dismissed.

### Second Motion to Dismiss

In a separate motion to dismiss, brought by defendants County of San Luis Obispo, Hedges, Thompson, and Kenitz, pursuant to Fed. R. Civ. P. 12(b)(6), the following three

\\\\\

grounds are raised:[7] 1)  defendants Hedges, Thompson and Kenitz should be dismissed for

plaintiff's failure to identify any personal participation of any of them in the alleged violations; 2)

defendants Hodges, Thompson and Kenitz are entitled to qualified immunity because they did

not violate any clearly established constitutional right; 3) defendant County of San Luis Obispo

cannot be sued under § 1983 on a respondeat superior theory of liability.  Second Motion to

Dismiss (MTD2), pp. 4-8.

                Defendants Hedges, Thompson, Kenitz and County of Solano are named in claim

II, while defendant County of Solano is also named as a defendant in claim III.  See Complaint,

pp. 9-14.  Defendants Hedges, Thompson, Kenitz argue that plaintiff failed to identify their

personal participation in any alleged violations and thus they should be dismissed, while plaintiff

counters that these individuals are responsible for implementing the policies under which he was

housed in SLO CJ.   Plaintiff challenges the conditions under which he was confined, as a

pretrial detainee or as one civilly committed pursuant to § 1026, which conditions are set forth

above.  The court finds that very much for the same reasons that the state officials at ASH are not

entitled to qualified immunity with regard to plaintiff's claims regarding a violation of his federal

liberty interest in being maintained in DMH/ASH custody, these individual defendants, Hedges,

Sheriff of San Luis Obispo County; Thompson, SLO CJ Classification Sergeant; and Kenitz,

SLO CJ Correctional Lieutenant, are also not so entitled.  Plaintiff's allegations that defendants

actively enforced the discriminatory practices and policies of SLO CJ, as set forth above, with

respect to those involuntarily civilly committed to ASH under Cal. Pen. Code § 1026 are

sufficient to defeat a motion to dismiss under Rule 12(b)(6).

                As to defendant Solano County, in addition to unconstitutional conditions of

confinement as alleged for those confined pursuant to his custody status, plaintiff also alleges

---

     [7] The court notes that these defendants failed to properly set forth the grounds for their
motion in the notice, apparently inadvertently omitting them, but review of the supporting
memorandum of points and authorities shows the grounds separately set forth.

1   that County, through its agents, were responsible for his transfer to state prison.  Plaintiff is not

2   alleging respondeat superior liability but rather that defendant County did not implement or

3   enforce practices or policies, in conformity with statutory guidelines, for his care and custody.

4          "[L]ocal governments, like any other § 1983 'person,' ... may be sued for

5   constitutional deprivations visited pursuant to governmental 'custom' even though such a custom

6   has not received formal approval through the body's official decisionmaking channels." Monell

7   v. Department of Social Services, 436 U.S. at 690-91, 98 S.Ct. at 2036. "[P]laintiff must allege

8   that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized

9   city policy.  Monell, at 690-91, 98 S.Ct. at 2035-36; Harris v. City of Roseburg, 664 F.2d 1121,

10  1130 (9th Cir. 1981) (" ' 'Official policy' within the meaning of Monell [encompasses situations]

11  where a municipality 'impliedly or tacitly authorized, approved, or encouraged' illegal conduct

12  by its police officers.'") (quoting Turpin v. Mailet, 619 F.2d 196, 201 (2nd Cir.), cert. denied,

13  449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980))."  Gibson v. U.S., 781 F.2d 1334,

14  1337-1338 (9th Cir. 1986); see also, Ortez v. Washington Cty., 88 F.3d 804, 811 (9th Cir.1996).

15  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under

16  Monell, unless proof of the incident includes proof that it was caused by an existing,

17  unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.

18  Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved.

19  But where the policy relied upon is not itself unconstitutional, considerably more proof than the

20  single incident will be necessary in every case to establish both the requisite fault on the part of

21  the municipality, and the causal connection between the 'policy' and the constitutional

22  deprivation."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-824, 105 S.Ct. 2427, 2436, 85

23  L.Ed.2d 791 (1985).

24          " '[O]ur first inquiry in any case alleging municipal liability under § 1983 is the

25  question whether there is a direct causal link between a municipal policy or custom and the

26  alleged constitutional deprivation.' "  Collins v. City of Harker Heights, 503 U.S. 115, 123, 112

1   S.Ct. 1061, 1067, 117 L.Ed.2d 261 (1992), quoting in Canton v. Harris, 489 U.S. 378, 109 S.Ct.

2   1197, 103 L.Ed.2d 412 (1989).  Municipal liability can be established either by an

3   unconstitutional policy, or by a policy or custom of failing to train employees where such failure

4   causes a violation of constitutional rights demonstrating deliberate indifference.  Id.

5   Portnoy v. City of Davis, 663 F. Supp.2d 949, 959-60 (E.D. Cal. 2009).

6           Once again, as in the prior motion, the county defendants fail to identify the crux

7   of plaintiff's claim, that state statutes governing his custody status give rise to a federal liberty

8   interest to which these defendants were deliberately indifferent in violation of his constitutional

9   rights and/or failed to implement or enforce policies, practices and procedures, while he was

10  detained in the SLO CJ, which protected that interest.  To that extent, therefore, the County

11  defendants' motion to dismiss should be denied.  However, to the extent that plaintiff alleges a

12  separate violation of his rights under the Eighth Amendment for a lack of mental health treatment

13  while housed at the SCO CJ, being maintained in "disciplinary isolation" or any other condition

14  of confinement, any such claim will be dismissed with leave to amend.

15          Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall assign a

16  district judge to this case.

17          IT IS HEREBY RECOMMENDED that:

18          1.  Defendants Schwarzenegger/Brown and Cate be dismissed for all claims.

19          2.  The motion to dismiss, filed on March 3, 2011 (docket # 18), brought by

20  defendants Benchman, DeMorales, Griffith, Holt, Knapp, Mayberg, Mills, Radavsky, Vazquez,

21  Walker and the State of California be granted with respect to dismissal of plaintiff's Eighth

22  Amendment claims.  Plaintiff is granted leave to amend as to these claims against individual

23  defendants within twenty-one days.

24          3.  The motion to dismiss, filed on May 4, 2011 (docket # 23), brought by

25  defendants County of San Luis Obispo, Patrick Hedges, Robert Thompson, and Kelly Kenitz, be

26  granted as to any claims arising under the Eighth Amendment with leave to amend within

twenty-one days.

4. The individual defendants be dismissed from plaintiff's claims under the ADA and RLUIPA, and these claims proceed only against defendant State of California (injunctive relief claims only under RLUIPA);

5. The motion to dismiss, filed on March 3, 2011 (docket # 18), brought by defendants Benchman, DeMorales, Griffith, Holt, Knapp, Mayberg, Mills, Radavsky, Vazquez, Walker and the State of California, further be granted in part and denied in part:

(A) Granted with prejudice as to plaintiff's § 1983 claims against defendant State of California;

(B) Granted as to plaintiff's claims under § 1983 against defendants Griffith, Holt, Mills, Benchman as to claim V (Personal Property) altogether;

(C) Denied as to plaintiff's claims implicating a federal liberty interest against the following: defendants Mayberg, DeMorales and Knapp in claims I, II and III; defendant Radavsky in claims I and III, defendant Holt in claim III;

(D) Denied as to defendants Vazquez and Walker in claim IV, as to plaintiff's claims implicating a federal liberty interest;

(E) Granted with respect to all defendants as to plaintiff's claims of a violation of his Equal Protection rights and right to privacy under the Fourteenth Amendment.

6. The motion to dismiss, filed on May 4, 2011 (docket # 23), brought by defendants County of San Luis Obispo, Patrick Hedges, Robert Thompson, and Kelly Kenitz, be denied with respect to plaintiff's claim of a violation of his constitutional rights to the extent plaintiff was retained in the custody of the County's jail without due process based on a federal liberty interest arising from state statute.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

shall be served and filed within fourteen days after service of the objections.  The parties are

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 25, 2012

                            <u>/s/ Gregory G. Hollows          </u>
                            UNITED STATES MAGISTRATE JUDGE

GGH:009
luce2132.mtd

33